UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 19-20073-CIV-ALTONAGA/Goodman

**SHEHAN WIJESINHA**,

    Plaintiff,
v.

**BLUEGREEN VACATIONS UNLIMITED, INC.**,

    Defendant.
_____/

## ORDER

**THIS CAUSE** came before the Court on Plaintiff, Shehan Wijesinha's Motion to Exclude the Expert Witness Testimony of Jan Kostyun [ECF No. 71], filed June 7, 2019. Defendant, BlueGreen Vacations Unlimited, Inc., filed an Opposition [ECF No. 76] ("Response"); to which Plaintiff filed a Reply [ECF No. 77]. The Court has carefully reviewed the parties' briefing, Jan Kostyun's Amended and Supplemental Report[1] [ECF No. 71-1] ("Report"), the record, and applicable law.

### I.    BACKGROUND

The parties and the Court are familiar with the facts of this case (*see, e.g.*, April 3, 2019 Order [ECF No. 29]), and so the Court provides only a brief background of the relevant facts as necessary for resolution of the present Motion. Defendant is a vacation ownership or timeshare company that offers vacation and travel services. (*See* Resp. 2). Defendant has a marketing partnership with Choice Hotels International, Inc. ("Choice"). (*See id*. 3). Choice receives information from its customers — including names and phone numbers — and passes this

---

[1] The Court has also reviewed Kostyun's Expert Report dated May 24, 2019 [ECF No. 68-1] ("Original Report").

information to Defendant as "Leads." (*See id*.). Defendant then forwards these Leads to Gold Mountain Communications, LLC ("Gold Mountain"), which makes outbound marketing calls on Defendant's behalf. (*See id*.). Plaintiff received one of these marketing calls which provided the impetus for filing this action.

On May 16, 2019, Plaintiff filed a Motion for Class Certification [ECF No. 58]; to which Defendant filed a Response [ECF No. 64]. In its Response, Defendant introduced and relied upon Jan Kostyun's Original Report. (*See generally* Resp.).

At issue is Defendant's ability to rely upon the Report[2] of its expert, Jan Kostyun, retained to determine if there is a "class-wide solution available to accurately identify subscribers and users of cell phone numbers as of the historic date of a particular call." (*Id*. 2). Kostyun opines as follows: (1) all calls at issue were placed with a TCN Manually Approved Calling System, equipment that does not have the capacity to produce telephone numbers to be called, using a random or sequential number generator, to store such numbers, or to dial such numbers (*see* Report ¶ 20); (2) any interpretation that characterizes the TCN Manually Approved Calling System as an automatic telephone dialing system ("ATDS") would make all smartphones ATDSs (*see id.*); (3) the Choice Lead Files provided to Bluegreen are inaccurate, incomplete, and cannot be used to reliably identify call recipients (*see id.*); (4) the Clicker Records produced by the TCN dialing system and Disposition Records produced through Gold Mountain's agents cannot provide an accurate representation of the calls placed during Defendant's marketing campaign (*see id.*); and (5) if a set of telephone numbers could be itemized to which calls were placed, there are

---

[2] Although Kostyun's opinions and conclusions remain the same in each of his reports, references to the "Report" in this Order are to the Amended and Supplemental Report dated June 3, 2019, and not the Original Report dated May 24, 2019.

tremendous barriers to accurately identifying the users or subscribers associated with those numbers on the dates of the calls (*see id.*).

Plaintiff seeks to exclude Kostyun's testimony in full, arguing Kostyun is not qualified to testify about the matters for which Defendant presents him as an expert (*see* Mot. 4–8); his methodology is unreliable (*see id.* 8–13); his Report and findings do not require expertise and can be adequately duplicated by a layperson (*see id.* 13–15); and his opinions are not helpful to the trier of fact (*see id.* 15–18).

## II. LEGAL STANDARD

Federal Rule of Evidence 702 governs the admission of expert evidence. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993). Under Rule 702, "district courts must act as 'gatekeepers' which admit expert testimony only if it is reliable and relevant." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589). An expert may testify, if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In assessing the admissibility of expert testimony, the Eleventh Circuit requires district courts to engage in a three-part inquiry to determine whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address;
> (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and
> (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (citing *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)). "The Eleventh Circuit refers to these requirements as the 'qualifications,' 'reliability,' and 'helpfulness' prongs, respectively." *Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 660 (S.D. Fla. 2012) (citations omitted). The proponent of the expert testimony bears the burden of establishing by a preponderance of the evidence the expert's qualifications, reliability, and helpfulness. *See Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183, 1194 (11th Cir. 2010).

With respect to the first requirement, "experts may be qualified in various ways. While scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260–61. For the second requirement, the Supreme Court suggested in *Daubert* a non-exhaustive list of several factors to consider in determining if a methodology is reliable under Rule 702: (1) whether the methodology can and has been tested; (2) whether the methodology has been subjected to peer review and publication; (3) the known or potential rate of error and the existence and maintenance of standards controlling operation of the methodology; and (4) whether the methodology has gained general acceptance in the scientific community. *See* 509 U.S. at 593–94 (declining to set forth a "definitive checklist or test"); *accord Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

In *Kumho*, the Supreme Court emphasized, "the trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." 526 U.S. at 152. Nevertheless, while the inquiry is "a flexible one," the focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594–95. "But conclusions and methodology are not entirely distinct from one another. . . . [N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit

opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (alterations added).

As to the third element, whether testimony assists the trier of fact "goes primarily to relevance. Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful." *Daubert*, 509 U.S. at 591 (citation and internal quotation marks omitted).

In assessing the validity of the expert's methodology, the district court may not "make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003). "The gatekeeper role . . . is not intended to supplant the adversary system or the role of the jury." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1311 (11th Cir. 1999) (alteration added). Instead, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (alteration added; citation omitted). The court's role is limited to analyzing if the evidence is unreliable and irrelevant "because of its inability to assist in factual determinations, its potential to create confusion, and its lack of probative value." *Allison*, 184 F.3d at 1312.

### III.     ANALYSIS

#### A. Qualifications

Expert testimony is admissible only if the testimony is given by "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education." Fed. R. Evid. 702 (alteration added). Rule 702 makes clear that "[w]hile scientific training or education may provide possible means to qualify, experience in a field may offer another path to expert status." *Frazier*, 387 F.3d at 1260–61 (alteration added). Assuming an expert is qualified to testify, the expert may testify only about matters within the scope of his or her expertise. *See Harcros Chems., Inc.*, 158

F.3d at 562 (explaining "the expert [must be] qualified to testify competently regarding the matters he intends to address" (alteration added; citations omitted)); *Feliciano v. City of Miami Beach*, 844 F. Supp. 2d 1258, 1262 (S.D. Fla. 2012) ("Determining whether a witness is qualified to testify as an expert requires the trial court to examine the credentials of the proposed expert in light of the subject matter of the proposed testimony." (internal quotation marks and citations omitted)). The inquiry is not stringent; "so long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight, not admissibility." *Pleasant Valley Biofuels, LLC v. Sanchez-Medina*, No. 13-23046-CIV, 2014 WL 2855062, at *2 (S.D. Fla. June 23, 2014) (internal quotation marks and citation omitted).

Kostyun is a technology consultant with more than 35 years of experience in telecommunications, enterprise architecture, and information technologies. (*See* Report 2). Kostyun has been employed by major telecommunications companies and has engaged as a consultant for private companies and regulatory bodies. (*See id.*). He has experience in database methodologies, data analysis, and data mining, having personally performed database queries and data analyses against "hundreds of data stores." (*Id.* 3). For the past ten years, he has worked as a consultant and expert witness on numerous cases involving the Telephone Consumer Protection Act ("TCPA"), and his "opinions have never been stricken or rejected." (*Id.* 5). Kostyun has served as an expert witness on class certification in TCPA actions like the action here. *See Wilson v. Badcock Home Furniture*, 329 F.R.D. 454, 457 (M.D. Fla. 2018) (discussing the feasibility of identifying cell phone subscribers given the lack of a public database and the inaccuracies of private services); *Jacobs v. Quicken Loans, Inc.*, No. 15-81386-CIV, 2017 WL 4838567, at *3 (S.D. Fla. Oct. 19, 2017) (denying class certification and citing, in part, Kostyun's opinion "there

is no public database, of cell phone subscribers, and private services are often inaccurate and incomplete").

Plaintiff argues Kostyun is not qualified to opine on the "reverse-append" method[3] because he lacks "any significant level of education or training in performing, reviewing, testing, or otherwise working with data vendors in this regard." (Mot. 5 (citation omitted)). Plaintiff relies on answers Kostyun gave at his deposition to argue Kostyun has limited experience with many of the reputable data vendors regarding the reverse-append process. (*See id*. 6). Plaintiff asserts Kostyun is not qualified to give an expert opinion as to the ability and willingness of mobile carriers to comply with subpoena demands regarding subscriber information. (*See id*.). Plaintiff insists "Kostyun's Report is a collection of claims regarding the reverse append and subpoena process that have little to no support." (*Id*. 8).

According to Defendant, Kostyun has "extensive experience with the background telecommunications, enterprise architecture, and information technologies that will necessarily affect the output of any third party reverse append process." (Resp. 7). "[D]uring his tenure working for telecommunications companies, he was involved in building the actual business systems that collect, store and maintain subscriber data." (*Id*. (alteration added)). "Kostyun personally observed a significant number of instances in which carrier personnel discovered inaccuracies in the customer data stored in their systems, and has testified to that fact in prior cases." (*Id*.). Defendant recounts Kostyun's experience with data vendors generally and details his specific experience with data vendors regarding the reverse-append process. (*See id*. 7–10). Defendant also makes a similar showing as to Kostyun's expertise regarding mobile carriers and subpoena demands for subscriber information. (*See id*. 10–11).

---

[3] The reverse-append method refers to the process of partnering with data vendors in order to match telephone numbers to particular names, addresses, and cellular services. (*See* Mot. 5 n.4).

7

Given Kostyun's extensive experience in the telecommunications industry and with database methodologies, data analysis, data mining, and the collection of subscriber information, the Court agrees with Defendant. Kostyun's "education, experience, and professional background can and do, in and of themselves, satisfy the relatively low threshold established by Rule 702 and *Daubert* and its progeny." *Clena Investments, Inc.*, 280 F.R.D. at 662. This finding is consistent with other federal courts that have considered Kostyun's opinions regarding subscriber identification using the reverse-append process. *See, e.g.*, *Wilson*, 329 F.R.D. at 457 and *Jacobs*, 2017 WL 4838567, at *3.

As to Kostyun's qualifications regarding the ability and willingness of mobile carriers to comply with subpoenas, Plaintiff's characterization of Kostyun's experience — based on selectively chosen out-of-context excerpts from Kostyun's deposition — fails to persuade. (*See* Mot. 6–8). For example, in arguing Kostyun could not provide a basis for his opinion, Plaintiff cites the following exchange:

> Q. Are you aware of any instance where any major carrier has provided no data in response to a subpoena identifying thousands of telephone numbers and asking for subscriber information for those numbers?
>
> A. I'm not aware of a large subscriber failing to reply to subpoenas[.]

(*Id.* 7 (citing Kostyun Dep. [ECF No. 71-2] 123:5–10)).

Plaintiff attempts to create the inference that Kostyun has no basis for his opinion and could not recall a relevant situation. Reading Kostyun's answer in context reveals his actual statement was: "I'm not aware of a large subscriber failing to reply to subpoenas, *but I'm certainly aware of problems with the data that has been returned and conflicts that have been received from those carriers*." (Kostyun Dep. 123:9–12 (emphasis added)). Considering Kostyun's involvement in several cases dealing with subpoenaed information from mobile carriers, as well as his extensive

experience in the telecommunications field, Kostyun is sufficiently qualified to serve as an expert in this case.

### B. Reliability

Under Rule 702, expert testimony is admissible only if "the testimony is based on sufficient facts or data; . . . the testimony is the product of reliable principles and methods; and . . . the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)–(d) (alterations added). Accordingly, a witness who relies "solely or primarily on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." *Frazier*, 387 F.3d at 1261 (alteration added; internal quotation marks, emphasis, and citations omitted). A trial judge has "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho*, 526 U.S. at 152. While this is a flexible inquiry, the Court's focus "must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 594–95 (footnote call number omitted).

Plaintiff argues Kostyun's "inability to produce his work product and subsequent inability to testify competently about what documents he reviewed demonstrate a lack in methodology on his part." (Mot. 11). Much of Plaintiff's initial argument is related to the issue of 230 missing Lead files Kostyun identified in his analysis. (*See id*. 10–11). Plaintiff again points to Kostyun's lack of familiarity with certain databases regarding the reverse-append process to argue a lack of methodology and expertise by Kostyun. (*See id*. 12).

Defendant states "Plaintiff's counsel — not Kostyun — misunderstands the source and origin of the files Kostyun reviewed to make his opinion regarding the missing lead data." (Resp. 12). Defendant explains Kostyun's lack of work product is unrelated to the reliability of his

methodology, as he has made clear "he preserves the data or logic he used to produce his analysis results and can produce the supporting evidence if necessary." (*Id*. 13). Defendant asserts "Plaintiff's expert also has the same access to these records and the potential to analyze it was at his disposal, yet he chose not to." (*Id*.). Defendant rests on Kostyun's analysis about the inherent limitations in the products utilized in the reverse-append process, as well as his experience with other databases to support the reliability of Kostyun's methodology. (*See id*. 13–14).

As to the 230 Lead files in question, Plaintiff admits there was a misunderstanding with production. (*See* Reply 6 n.2). Although there is no longer an issue regarding Kostyun's initial opinion regarding these files (*see id*. 6), Plaintiff argues "the fact that the original opinion existed at all is a sign of his flawed methodology" (*id*.). This argument is premised on Kostyun's decision when "[f]aced with this discrepancy of missing leads, rather than investigate further, Kostyun seized on the opportunity to argue that the files were unreliable." (*Id*. (alteration added)). Plaintiff fails to persuade.

Plaintiff asserts Kostyun should have known there was an error in production and his failure to investigate further implies a lack of expertise or methodology. (*See id*.). But Kostyun "had no reason to suspect that the data was incomplete." (Kostyun Dep. 62:24–25). The following exchange provides context:

> A. All I can tell you is that the data that I used was provided to me by counsel, and my understanding was that counsel received it from you as part of the Gold Mountain subpoena.
>
> Q. Okay. Did you ever ask if you had been provided all of the lead information?
>
> A. It was understood as part of the exchange of information that that was all there was.

(Kostyun Dep. 62:4–11).

Plaintiff does not provide a compelling reason Kostyun should have assumed additional investigation was needed. (*See* Reply 6). Plaintiff does not explain any connection between Kostyun's lack of investigation and the reliability of the methodology Kostyun used to form his opinions. (*See generally id.*). The Court will not exclude Kostyun's testimony because Kostyun failed to undertake an investigation into an undisclosed production error between the parties.

As to Kostyun's failure to provide underlying work-product, "a non-scientific expert may be qualified based on his personal knowledge or experience without the necessity of establishing standards of scientific reliability, such as testability and peer review." *S.E.C. v. Hall*, No. 15-23489-CIV, 2017 WL 3635109, at *4 (S.D. Fla. Jan. 4, 2017) (internal quotation marks and alteration omitted) (quoting *S.E.C. v. Big Apple Consulting USA, Inc.*, No. 6:09-CV-1963, 2011 WL 3753581, at *3 (M.D. Fla. Aug. 25, 2011)). Nevertheless, "[t]o be qualified as an expert witness based solely or primarily on experience, [] the witness must explain *how* that experience leads to the conclusion reached, why that experience is a sufficient basis for the expert opinion, and how that experience is reliably applied to the facts." *Garcia v. Chapman*, No. 12-21891-CIV, 2014 WL 11822750, at *15 (S.D. Fla. Jan. 29, 2014) (first alteration added; emphasis in original; internal quotation marks omitted) (quoting *Frazier*, 387 F.3d at 1261); other citation omitted).

Kostyun has demonstrated a sufficient connection between his relevant work-experience and his various opinions. (*See generally* Report). For example, when discussing his opinion regarding the barriers to accurately identifying the users or subscribers associated with phone numbers, Kostyun discusses his past experience in prior TCPA cases and the challenges that arose. (*See id*. ¶ 111). The connection between Kostyun's experiences and his opinions is also evident throughout his deposition. (*See generally* Kostyun Dep.). When discussing his opinion regarding stale-dated information within Lead files, Kostyun states, "again my experience is, particularly

11

working with telephone customers, that there is contact information that people never update over time and it becomes inaccurate." (*Id*. 67:13–16).

Plaintiff fails make the case for an order preventing Defendant's expert from testifying because of a failure to produce work-product. (*See generally* Mot.). Given Kostyun proffered experience-based support for his opinions, Plaintiff's objections to Kostyun's testimony are more appropriately directed at weight and credibility, not admissibility. *See Sorrels v. NCL (Bahamas) Ltd*., 796 F.3d 1275, 1285 (11th Cir. 2015) ("Any weaknesses in the factual underpinnings of [the expert's] opinion go to the weight and credibility of his testimony, not to its admissibility." (alteration in original; quotation marks and citation omitted)).

**C. Helpfulness**

Expert testimony is admissible only if "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Expert testimony is helpful if it "concerns matters that are beyond the understanding of the average lay person," but expert testimony generally is not helpful "when it offers nothing more than what lawyers for the parties can argue in closing arguments." *Frazier*, 387 F.3d at 1262–63 (citations omitted). Thus, while "[a]n expert may testify as to his opinion on an ultimate issue of fact[,] . . . [a]n expert may not . . . merely tell the jury what result to reach." *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990) (alterations added; citations omitted). Similarly, an expert "may not testify to the legal implications of conduct; the court must be the jury's only source of law." *Id.* (citations omitted).

Plaintiff argues "Kostyun's opinions do not rely on expertise to assist a layperson with understanding complicated facts — it is the same work a layperson would perform with rudimentary computer skills — and thus Kostyun's report and testimony should be excluded."

(Mot. 15). Plaintiff further asserts "Kostyun cannot help the trier of fact here because his conclusions are designed to be misleading." (*Id*. 16). Defendant contends Kostyun's opinions are helpful, bear directly on issues of class certification and liability, and are not misleading. (*See* Resp. 17–20). Defendant again has the better argument.

First, Kostyun's opinions require the expertise necessary to satisfy *Daubert* and Rule 702. Plaintiff's position is premised on statements made by Kostyun that a lay-person could replicate the results of his Report. (*See* Mot. 14–15). Plaintiff supports this argument by mischaracterizing Kostyun's statements to imply no expertise was required for the analysis. (*See id*. 14–15). Kostyun makes clear "my skill was involved in being able to identify this as a potential problem in the first place. So it was experience-based testing that I performed. Now that I've opened the door for you, as a layman, you can do the same thing." (Kostyun Dep. 70:14–18). Defendant correctly identifies the difference between "the back-end, ministerial task of checking work product that has already been done with the front-end analysis." (Resp. 14). In any event, the lack of a highly complex, technical process does not preclude a witness from testifying as an expert. *See Hall*, 2017 WL 3635109, at *4.

Second, the Court will not exclude Kostyun's testimony on the basis Plaintiff finds it misleading. Plaintiff states it is "misleading for Kostyun to present just the facts that supports [*sic*] his conclusions while hiding the facts that do not." (Reply 10). But it is not a district court's role to "make ultimate conclusions as to the persuasiveness of the proffered evidence." *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1341. If Plaintiff believes common sense and logic undercut Kostyun's opinions, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596 (alteration added; citation omitted).

## IV. CONCLUSION

For the foregoing reasons, it is

**ORDERED AND ADJUDGED** that Plaintiff's Motion to Exclude the Expert Witness Testimony of Jan Kostyun **[ECF No. 71]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 11th day of July, 2019.

_____
**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record